# HELEN A. LINTHICUM et al. *vs.* MARY E. POLK ET AL.

*Jurisdiction of the Orphans' Court When an Executor Claims Title to Property Alleged to Belong to Decedent's Estate and Omitted from the Inventory—Construction of Code, Art. 93, sec. 239—Appeal from Order of Orphans' Court on Petition Alleging Concealment of Assets—Parties.*

The Orphans' Court has jurisdiction, under Code, Art. 93, sec. 239, to determine the questions arising upon a petition filed by a distributee of an estate alleging that one of two executors has omitted to return in the inventory certain articles of personal property belonging to the decedent and to return in the list of debts certain money of the testator which came into the possession of the executor before the testator's death ; and the fact that such executor claims title to the property in question, does not oust the jurisdiction of the Orphans' Court.

From an order of the Orphans' Court passed under Code, Art. 93, secs. 238, 239, upon a petition alleging concealment of assets by an executor or administrator, or failure to return an accurate list of debts or inventory of personalty, an appeal lies to the Circuit Court for the county. or the Superior Court, etc., of Baltimore City, under Code, Art. 93, sec. 240, but no appeal lies from the judgment of that Court to the Court of Appeals.

In a petition in the Orphans' Court alleging that an executrix has omitted to return in the inventory property belonging to the testator, the husband of the executrix is a proper party to be joined as a defendant.

Appeal from the Superior Court of Baltimore City. (HARLAN, C. J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE and JONES, JJ.

*Thomas R. Clendinen* and *J. Chas. Linthicum* for Helen A. Linthicum, appellant.

The questions involved, are : *First.* Has the Orphans' Court jurisdiction to entertain a petition of individuals in interest alleging that an individual (who is also a co-executor) has possession of certain of the testator's assets and that she be com-

pelled to bring them into Court, when the answer shows that she claims *title* thereto ?

*Second.* Has the Orphans' Court jurisdiction to entertain a petition of individuals in interest naming other individuals as respondents and should not the petition herein be dismissed so far as same is against Helen A. Linthicum and J. Charles Linthicum, as individuals, and as far as they are concerned therein, in their individual capacity ?

*Third.* Has the Orphans' Court jurisdiction to entertain a petition of individuals in interest praying that an individual (who is also a co-executor) account to the Orphans' Court for certain moneys collected by her for testator before testator's death, alleged to have been kept by her while an individual or appropriated by her after testator's death—when the answer shows that it was paid to and expended by testator before his death ?

*Fourth.* Has the Orphans' Court jurisdiction to entertain a petition of individuals in interest praying that co-executors make an additional inventory of goods and moneys said by such petition to be claimed by an individual in her individual capacity ?

To the first question we submit : (*a.*) That the only thing which tends to give the Orphans' Court jurisdiction is Art. 93, sec. 239 and that it only gives it a right to entertain a petition wherein it is alleged by individuals in interest that *an* executor (not a joint executor) conceals or has in his hands and has omitted to return any part of decedent's assets.   (*b.*) That sec. 241 provides the procedure in the case of joint executors and that if the joint executor, not alleged to be in default, does not care to proceed against the other, then the individuals in interest have their remedy by petitioning for a removal and by suit on the bond of both executors.   (*c.*) That the claim of title by Helen A. Linthicum ousts the jurisdiction of the Orphans' Court as to those goods to which title is claimed.

To the second question we submit : That Art. 93, sec. 239, the section of the Code under the authority of which the petition was admittedly filed does not, nor is there any warrant

whatever anywhere for individuals to petition the Orphans' Court alleging a withholding of assets of decedent by other individuals.

To the third question we submit: (*a.*) That the appellant, Helen A. Linthicum, if held accountable for the $2,300, can only be so held individually, as the money was collected before testator's death, in which capacity the Orphans' Court has no jurisdiction over her. (*b.*) That the charge in the petition relative to the $2,300 is not sufficiently specific for the Orphans' Court to take further cognizance of it after the statement of respondent in regard thereto.

To the fourth question we submit : (*a.*) That executors, however numerous, are treated in law as one person, and that no order can be passed except against all. (*b.*) That the Orphans' Court cannot pass an order against an executor under Code, Art. 93, sec. 239, requiring him to return money or goods which it is alleged are held by another person, unless it is also alleged that the executor is in collusion or *particeps criminis.*

The appellants are also of the opinion that the Court below erred in its interpretation of the decisions of· this Court in the cases of *Gibson* v. *Cook, Admr.*, 62 Md. 258-260; *Daugherty* v. *Daugherty*, 82 Md. 231; *Taylor* v. *Bruscup*, 27 Md. 225. In these cases, this Court *did not* hold that the Orphans' Court had not jurisdiction to try a question of title, *because there was no issue of concealment.* "But," said this Court, "the Orphans' Court has no jurisdiction, *because it is a question of title, and not one of concealment.*"

" The Orphans' Court shall not, under pretext of incidental power or constructive authority, exercise any jurisdiction not expressly conferred by law." (Code, Article 93, section 256.) This is but a statutory recognition of a principle of common law that Courts of special limited jurisdiction must be confined to the express letter of authority. *Taylor* v. *Bruscup*, 27 Md. 225; *Blumenthal* v. *Moitz*, 76 Md. 566; *Brown* v. *Preston*, 38 Md. 373; *Stanley* v. *Safe Deposit Co.*, 87 Md. 453.

An adverse claim based on " title " ousts the Orphans'

Court of jurisdiction except by "consent of both parties," since that Court has no jurisdiction to try a question relating to the title to property. *Gibson* v. *Cook*, 62 Md. 260; *Levering* v. *Levering*, 64 Md. 410; *Blumenthal* v. *Moitz*, 76 Md. 566; *Daugherty* v. *Daugherty*, 82 Md. 232.

We submit that the Orphans' Court has no jurisdiction to entertain the petition as to the $2,300, for certainly that is a matter in which Mrs. Linthicum, if accountable at all, can only be so held individually, because, as it is alleged, the money came into the hands of Mrs. Linthicum on November the 1st and 9th, 1896, respectively; whereas, Mr. Clark did not depart this life until December 8th, of the same year, and Mrs. Linthicum positively asserts, that she paid the money over to him, and that he disposed of it before his death. If the Orphans' Court has jurisdiction to go into matters transpiring between a husband and wife a month before the husband's death, certainly it would have an equal right over matters which transpired between them at any time during their entire married life of thirteen years, and to examine into and compel an accounting for the hundreds of collections and business matters attended to by Mrs. Linthicum, then Mrs. Clark, during that time.

*James P. Gorter*, and *H. Arthur Stump*, for the appellees.

To say that the Orphans' Court cannot enquire into the question whether *the administratrix has in her hand and has omitted to return any part of the decedent's assets*, when, incidental to that enquiry, the title claimed by the administrator or executor might be involved, is to declare that these words in section 239 are useless and without legal effect. To illustrate: A petition is filed in the Orphans' Court under section 239, alleging concealment, and withholding of specific chattels. There are but three possible positions that the defendant or executor can take: 1. That he has not the goods. 2. That he has them, admits they belong to the estate, but refuses to return them. 3. That he has them, but claims title. If the petitioner can establish in the first case that the executor has

the goods, we have concealment made out, for if you prove that a party has chattels which he denies that he has, concealment is established.

In the second case there is no need of an investigation or inquiry; there is nothing in dispute to decree upon; there is no room for issues to a Common Law Court, or an appeal to the Superior Court. If you cannot inquire in the third case, the words "*or has in his hands and has omitted to return in the inventory or list of debts any part of his decedent's assets,*" are without effect. If the appellants' claim be sound, we are confronted with an Act which has stood upon the statute books of the State for 70 years, with clear and distinct language, extending the sphere of jurisdiction of the Orphans' Court beyond the section preceding, with reason and necessity for so doing, with severe measures to compel obedience, and finally with the authority conferred upon the Court to remove its disobedient officers, and yet powerless to accomplish any good, or reach any imaginable case.

Section 239, was enacted, required and intended to reach a case where the administrator withheld assets, whether title be claimed or not. The administrator is appointed by the Orphans' Court; it creates him; it can remove him, and it has full control and authority over him. It is but natural, therefore, to expect legislation, authorizing the Orphans' Court to investigate and enquire into matters wherein an administrator is concerned, when it would not be necessary or proper in cases where third persons were concerned, the jurisdiction of Courts of Law and Equity in such cases being amply sufficient. The administrator is vested with the legal title. He is, therefore, in a position to invoke the aid of a Court of Law or Equity, where a third person interferes in any way with the estate of a decedent, while, on the other hand, a person interested in the honest administration of an estate can, with difficulty, if at all in certain cases, reach an administrator at law or in equity. Illustration of this in the cases of *Beall* v. *Hilleary*, 1 Md. 197; *Hesson* v. *Hesson*, 14 Md. 8; *Whiting* v. *Whiting*, 64 Md. 157.

While Courts of Equity have, generally speaking, jurisdiction over executors and administrators, yet in Maryland the estates of deceased persons are universally (unless for some special reason Courts of Equity take jurisdiction) administered in the Orphans' Court, and the tendency of the decisions of this Court has been towards a non-interference with the Orphans' Courts in the exercise of their jurisdiction over the estates of deceased persons. In proceeding under sections 238, 239 and 240 every safeguard is thrown around the rights of all concerned.

It is said that the Orphans' Court cannot pass upon a question of title. This is true where the controversy is in respect to the rights of a third person, because the remedies at law and equity being full, adequate and complete, the Legislature has never conferred this power upon the Orphans' Court. You see illustrations of this principle: (*a.*) Where a claim of a third person against an estate is disputed by an executor. *Fowie* v. *Ghiselin*, 30 Md. 553 (*b.*) Where an executor claims assets for the estate, and the person holding them disputes the title. *Gibson* v. *Cook*, 62 Md. 256; *Taylor* v. *Bruscup*, 27 Md. 219. (*c.*) Where an effort is made to set aside a deed, *Daugherty* v. *Daugherty*, 82 Md. 229, relied on by the appellants below, although the answer in this case swore away the allegations of the petition.

But when you come to the jurisdiction of the Orphans' Court in dealing with an executor or administrator, you find a different principle, based upon the reason and the necessity of the case, running through the legislation of the State, and the decisions of the Court of Appeals. *Spencer* v. *Ragan*, 9 Gill, 480; *Beall* v. *Hilleary*, 1 Md. 186; *Hesson* v. *Hesson*, 14 Md. 8; *Whiting* v. *Whiting*, 64 Md. 157.

BOYD, J., delivered the opinion of the Court.

The appellees filed a petition in the Orphans' Court of Baltimore City alleging that Helen A. Clark, now Linthicum, who is one of the executors of Gabriel D. Clark, had taken possession of, concealed, and has "in her own hands and has

omitted to return" in the inventories to the Court certain sil-
verware, clocks, jewelry and other articles mentioned. Mrs.
Linthicum was the widow of Gabriel D. Clark when she mar-
ried J. Charles Linthicum. It is also alleged that on Novem-
ber 1, 1896, she came into possession of two thousand dol-
lars, and on November 9, 1896, of three hundred dollars be-
longing to said Clark, "but she has omitted to return said
money, either in any inventory or list of debts filed in this
Court, but concealed and withholds the same." The petition
prays that Helen A. Linthicum be required to bring into
Court the articles and money, together with all property be-
longing to the estate of Gabriel D. Clark, and that she and
Gabriel D. Clark, Jr., her co-executor, be required to return
an additional inventory of the said articles and money and of
all other assets omitted. A citation was then asked for
against Mrs. Linthicum and Gabriel D. Clark, Jr., executors,
and Mr. and Mrs. Linthicum, individually.

Gabriel D. Clark, Jr., filed an answer admitting that the
articles named in the petition belonged to their testator, and
that since his death Mrs. Linthicum has had them and, as she
claimed them as her own, he did not have them included in
the inventory. He also says he is informed that the two sums
of money came into possession of Mrs. Clark, but he does not
know what disposition she made of them and submits to the
passage of such order by the Court as to it may seem proper.

Mrs. Linthicum, as executrix, and individually with her hus-
band, filed an answer in which they deny the concealment of
any articles and also deny that any silverware, clocks and
jewelry in their possession belonged to the estate. They ad-
mitted that they had a few articles belonging to the estate
which she had retained on the authority of her co-executor at
the appraised value, as she supposed she had the right to do,
but upon being informed that they would have to be sold at
public auction, sent them to the auction rooms. They an-
swered the allegations as to the twenty-three hundred dollars,
by alleging that Helen A. Clark collected the two sums of
money during the lifetime of Gabriel D. Clark, at his request,

which she paid to him and they were by him expended and
disposed of in his lifetime.   In an amended answer they admit
having possession of a buffet and four busts which she asked
to be allowed to her as a part of the $75 a widow is entitled
to under section 299 of Art. 93 of Code, and alleged that cer-
tain jewelry, silverware and articles named therein were the
property of Mrs. Linthicum and, as she claims title to them,
the Orphans' Court had no jurisdiction over the matter.   Mr.
and Mrs. Linthicum filed a motion to dismiss the petition so
far as the same is against them as individuals, and as far as
they are concerned therein in their individual capacity.   The
Orphans' Court passed an order dismissing the petition for
want of jurisdiction and requiring the petitioners to pay the
costs.   From that order an appeal was taken by the petitioners
to the Superior Court of Baltimore City, which Court reversed
the order of the Orphans' Court and remanded the case for
further proceedings.   From the decree of the Superior Court
this appeal was taken and the question before us is whether
the Orphans' Court had jurisdiction.   If it had, then the de-
cision of the Superior Court, on the appeal to it, was final and
cannot be reviewed by us, but if the Orphans' Court had no
jurisdiction to entertain the petition, then the Superior Court
had none to review its decision and hence an appeal to this
Court would be proper, *Gibson* v. *Cook*, 62 Md. 256, although
when the Orphans' Court has jurisdiction under sections 238
and 239 of Art. 93 of the Code, the appeal authorized by sec-
tion 240 to the Circuit Court for a county, or the Superior
Court of Baltimore City "is *exclusive* of all other appeals, so
that in no event can an appeal in any such case be taken to
this Court under section 39 (now 58), of Art. 5 of the Code,"
*Hignutt* v. *Cranor*, 62 Md. 216.

As the statutes in question for the most part speak of an
"administrator" we will use that term, as under the rules of
interpretation, as adopted in section 4 of Art. 1 of the Code,
it includes "executor," unless such application of the term
would be unreasonable.   Under section 238 of Art. 93,
an administrator who believes that any person conceals any

part of his decedent's estate, can file a petition in the Orphans'
Court " alleging such concealment, and the Court shall com-
pel an answer thereto on oath."   The Court is authorized to
inquire into the charge and, if satisfied that the party has con-
cealed any part of the personal estate of the deceased, to order
the delivery thereof to the administrator, and enforce obedience
to such order by attachment, imprisonment or sequestration
of property.   The jurisdiction of the Court to proceed under
that section is founded exclusively on the allegation of conceal-
ment and hence it has been held by this Court that without
such allegation the Orphans' Court has no jurisdiction, *Taylor*
v. *Bruscup*, 27 Md. 219, and when the pleadings admit pos-
session by the defendant, but set up title in him, the Orphans'
Court has no jurisdiction, as there is no question of conceal-
ment to be passed on, but one of title which belongs to another
tribunal.   *Gibson* v. *Cook*, *supra*.   The appellants contend that
the same principles apply to section 239.   There is, however,
a manifest distinction between the two sections.   By the latter
the provisions of section 238 " are extended to all cases where
any person interested in any decedent's estate shall by bill or
petition allege that the administrator *has concealed, or has in
his hands and has omitted to return in the inventory or list of
debts* any part of his decedent's assets ; and if the Court shall
finally adjudge and decree in favor of the allegations of such
petition or bill, in whole or in part, they shall order an addi-
tional inventory, or list of debts, as the case may be, to be re-
turned by the administrator, and appraisement to be made
accordingly, to comprehend the assets omitted."   The plain
language of that section not only applies to concealment by
the administrator, but to cases in which he has omitted to re-
turn in the inventory, or list of debts, any part of his decedent's
assets.   The appellants contend, however, that if the adminis-
trator claims title to the property sought to be reached by a
proceeding under this section, the Orphans' Court has no juris-
diction to determine that question, and that the principles ap-
plied to cases under section 238 are applicable to those under
his section.   In making that contention, however, they lose

sight of the fact that section 238 does not give the Orphans'
Court power to determine anything, unless there has been con-
cealment and if the question of title is raised the administrator
can institute an action in one of the Courts having jurisdiction
over such controversies and have it regularly tried there.

But the object of section 239 is to require the administrator
to account *in the Orphans' Court* for all property of his dece-
dent.   He is, by virtue of his qualification as an administrator,
*in that Court,* and he is presumed to take all of his decedent's
personalty into that Court and to *there* account for it.  He be-
ing already there and the person interested in the decedent's
estate voluntarily coming into it, there is not the same reason
for denying the Orphans' Court jurisdiction to determine ques-
tions between them, as there is when the administrator under-
takes to bring into that Court one who is not already there.
But apart from that, the Orphans' Court is the one where the
inventory and list of debts are to be filed, and if the adminis-
trator does not file correct inventories or lists of debts, can
there be any reason why the Orphans' Court should not have
authority to compel him to do so?   Is that Court to be shorn
of all power to compel administrators to file true and correct
inventories and lists of debts on the mere allegation of the ad-
ministrator that the property belonged to him?   If the Or-
phans' Court cannot determine the question, what tribunal
can?   The title to property of the decedent is in the adminis-
trator.   No one could maintain an action of replevin, trover,
or other action to test the title against him for the estate, for
the simple reason that the title is in him as administrator, if the
property belongs to the estate.   If he has money belonging
to the estate, who could sue to recover it in a Court of law?
Manifestly no one could, for the reason that no one but the
administrator is entitled to recover the money due his dece-
dent.   Nor would there be any ground for a Court of equity
to give relief.   It was held as far back as *Beall* v. *Hilleary,* 1
Md. 186, that one executor could not file a bill in equity
against his co-executor in order to compel the latter to ac-
count for and pay over to him certain claims alleged to be due

from the defendant to the estate of their testator, and in *Whiting* v. *Whiting*, 64 Md. 157, that case was affirmed, and it was said: "The Code, by sections 225, 239 and 241, of Article 93, makes provision for proceeding against delinquent administrators, or co-administrators in the Orphans' Court; and a resort to the remedy thus provided would certainly be more expeditious and less expensive than by proceeding in equity."

It is true that the jurisdiction of the Orphans' Court is limited, but amongst the powers expressly conferred on it are those to "direct the conduct and settling the accounts of executors and administrators, superintend the distribution of the estates of intestates, secure the rights of orphans and legatees, and to administer justice in all matters relative to the affairs of deceased persons." Section 230 of Art. 93. It would indeed be scant justice if distributees, with a petition of this character, are to be turned out of Court on the mere allegation of an administrator that the property referred to belonged to him, and not to the estate he represents. The law does not prohibit those interested in estates from going into the Courts where they are to be settled, to demand proper accounting by administrators and executors.

It was suggested at the argument that section 241 afforded all the relief necessary. But that is a proceeding by one joint administrator or executor against another. It does not furnish any remedy to other parties, and if the one administrator or executor does not proceed against the other that section is of no avail. Of course in most instances the bond is liable for defaults by an administrator, but oftentimes that does not furnish the interested party all the relief he is entitled to. It may be that the distributees want the specific articles themselves and not simply their value, but if the position of the appellants is correct, an administrator could select for himself any article he wanted and merely by claiming title to it avoid any recovery of such article. There is nothing in our testamentary laws, or the construction of them by this Court to require or permit such a condition of affairs. Section 240 provides for issues being framed and sent to Courts of law, so that such

questions as arises under sections 238 and 239 can be passed on by juries and there can be no reason why the Orphans' Court cannot entertain a petition of this character under section 239, even if the administrator claims title to the property in question. If it is in fact his property then of course he is not required to account for it, but if it is the property of the estate, he should be required to produce it, when that is possible, or to account for it if that cannot be done.

It is contended that the pleadings show that the money referred to in the petition was received, if at all, prior to the death of Mr. Clark, and hence it could at most only be a debt due by Mrs. Linthicum to the estate. If that be conceded, then the petitioners had the right, under section 224, to go into the Orphans' Court and have that determined in one of the methods therein provided and if determined against the executrix she is required to account for the sum due as if it was so much money in her hands and on failure her bond could be sued. Section 225 protects the bond if the administrator or executor was insolvent, or unable to pay his debts at the time of his qualification, but his commissions are applied to the payment of the debt by that section and if he be a distributee the amount due by him must be deducted whether it was a debt due to the decedent or incurred to the estate itself after the decedent's death. *Hoffman* v. *Armstrong*, 90 Md. 130. The Orphans' Court would therefore clearly have had jurisdiction to inquire into that part of the claim under that section. But we have no doubt that it had under section 239. The petition alleges " that a considerable portion if not all of said sums of money remained or came into the hands of said Helen A. Clark, now Helen A. Linthicum, after the death of the said Gabriel D. Clark, but she has omitted to return said money either in any inventory or list of debts filed in this Court, but conceals and withholds the same." If that be true, it was clearly her duty to account for it as executrix—just as much so as if the money had been in bank, or in the pocketbook of the deceased when he died. If it can be properly

accounted for that will end that part of the controversy, but if
it is not, it is the duty of the executors to account for it—
either as money in hand or in the list of debts, if it was con-
verted by Mrs. Clark prior to his death.

It is perhaps not necessary for us to determine whether Mr.
and Mrs. Linthicum were properly included in the petition in
their individual capacity as the order appealed from dismissed
the petition, and therefore discharged her as executrix, as well
as in her individual capacity. But we can see no objection to
making the husband of Mrs. Linthicum a party. No relief is
sought against him, but as she married after she became one
of the executors, it was a very proper practice to join him in
the proceeding, for the protection of his wife, although no de-
cree would be passed against him. Excepting in cases where
the statute expressly provided for her being sued as a *feme-
sole,* it was, prior to the Act of 1898, generally proper, if not
necessary, to join the husband in a suit or proceeding against
the wife. With a few exceptions a married woman could not
be sued in equity without the joinder of her husband, *Clark*
v. *Boarman,* 89 Md. 428, and although this was not a proceed-
ing in equity the practice in the Orphans' Court resembles that
in equity more than that at law, and in cases of this character,
independent of the Act of 1898 which was not applicable, it
would seem to be eminently proper to make the husband a
party. There certainly could be no ground for dismissing the
petition, because Mrs. Linthicum as an individual was made a
party. As was well said by the learned Judge below : " If it
should be necessary ' to enforce obedience to such order ' as
may be passed ' by attachment, imprisonment or sequestration
of property ' a lady would derive small comfort from the
thought that as an individual she was entitled to her personal
freedom, but as executrix she was imprisoned under a commit-
ment for contempt."

Being of the opinion that the Orphans' Court had jurisdic-
tion under the allegations in the petition the decision of the
Superior Court of Baltimore City, to which an appeal was
taken, under section 240 of Article 93, was final, and this

Court is not authorized to review it.    The appeal will there-
fore be dismissed.

> *Appeal dismissed, Mr. and Mrs. Linthi-
> cum to pay the costs in this Court.*

(Decided March 7th, 1901.)